## William McClellan, Jr.

### *v.*

## Joel Darrah.

1. Specific performance—*delay in payment—and want of good faith.* Although in contracts for the sale of land, where time is not expressly made an essential stipulation, the mere failure by the purchaser to tender payment within the time agreed upon is not a reason for denying specific performance, if such delay receives a satisfactory explanation and one consistent with the good faith of the purchaser, yet he has never been permitted first wilfully to repudiate the obligations of his own contract, and then turn round and ask a court of chancery specifically to enforce it.

2. So, in this case, a party holding a contract for the purchase of land, sold the premises to another by a verbal agreement, the understanding being that it

was a cash transaction. The second purchaser, in order to make the cash payment, borrowed the money of a third person at ten per cent. interest; in order to secure the lender of this money it was paid to the vendor of the second purchaser, who gave his note to the lender therefor, bearing interest at ten per cent., as agreed upon. The purchaser went into possession and made some improvements. This sale to the second purchaser took place in the spring of 1863; his vendor obtained a deed under his contract of purchase in December, 1864, having paid a year's interest at ten per cent. on the note he had given for the money borrowed by his vendee. The deed obtained by the intermediate vendor ran directly to the second purchaser, and was at once tendered to him and payment demanded, but he denied having agreed to pay any interest on the money he had borrowed, which had been paid by his vendor, and refused to do so. A few days afterwards, the purchaser offered to pay the money with six per cent. interest, which was declined; and in the summer of 1865 he offered to pay the interest at the rate he had originally agreed upon, but this was also refused. On bill subsequently filed by the purchaser for a specific performance, it was held that his bad faith in repudiating his obligation to pay the ten per cent. interest, deprived him of any right to the relief sought.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

The facts in this case are fully presented in the opinion.

Mr. JACKSON GRIMSHAW and Mr. M. SCOGGAN, for the appellant.

Payment of part of the purchase is not necessary in order to give the vendee the right to a specific performance. *Parkhurst* v. *Van Cortland*, 14 Johns. 30, is a much stronger case than this. The evidence was much less certain; was by parol, no payments had been made, and it does not appear that the vendor was the cause of there being no written contract. It agrees with this case, even to repeated assurances to go on and make improvements, and the case was strongly contested.

Admission into possession, in pursuance of a parol agreement, removes the bar of the statute, and entitles the party to a specific performance. *Morphett* v. *Jones*, 1 Swans. Ch. Rep.

181–2 ; *Harris* v. *Knickerbocker*, 5 Wend. 645 ; *Leroy* v. *Tew*, 3 Barb. 413.

Taking possession or making valuable improvements, or payment of the purchase money, is sufficient to entitle the party to a specific performance in such cases. *Hawkins* v. *Hunt et al.* 14 Ill. 44 ; *Farwather* v. *Show*, 4 Iowa, 570.

Taking possession and making improvements is sufficient. 9 Pet. 204.

A promise, on the faith of which another performs an act, establishes the promise much in the same way as a consideration paid, and is good in equity. 3 Pars. on Contracts, 359, last edition ; *Crasbie* v. *McDougal*, 13 Vesey, jun. 148.

We refer to *Reynolds* v. *Johnson*, 13 Texas, 214, as strongly in point. On page 217, the court, under a state of facts somewhat similar to the present case, decree that title be vested in petitioner in court below, on his paying to defendant the purchase money with legal interest. Also see *McIntire* v. *Skinner*, 4 G. Greens, Iowa, 89. Also " the governing rule is that nothing is to be considered as a part performance which does not put the party into a situation which is a fraud on him, unless the agreement be performed. Possession by the vendor having unequivocal reference to the contract has always been considered an act of part performance. *Kidder* v. *Barr*, 35 N. H. 255 ; *Argnello* v. *Edinger*, 10 California, 158 ; *Pugh* v. *Good*, 3 Watts & Sargent, 61 ; *Brock et al.* v. *Cook et al.* 3 Porter, 467.

Messrs. WHEAT & MARCY, for the appellee.

Judge STORY, in his Equity Jurisprudence, vol. 1, sec. 764, says :

" In order to take a case out of the statute, on the ground of part performance of a parol contract, it is not only indispensable that the acts done should be clear and definite, and referable exclusively to the contract, but the contract should also be established by competent proofs, to be clear, definite

and unequivocal in all its terms. If the terms are uncertain or ambiguous, or not made out by satisfactory proofs, a specific performance will not (as indeed upon principle it should not,) be decreed. The reason would seem obvious enough, for a court of equity ought not to act upon conjectures; and one of the most important objects of the statute was, to prevent the introduction of loose and indeterminate proofs of what ought to be established by solemn, written contract."

And this court has repeatedly held the same doctrine to be the true rule. This doctrine is so manifestly just and proper, and so well understood, it is deemed unnecessary to refer to further authorities in support of it.

In numerous cases in this State, the court has granted relief where the purchase money was paid or tendered within the time required by the contract, and possession taken and improvements made. But in no case, has the court granted relief where the purchase money was not actually paid, or tendered, according to the contract. It seems, and very justly, to be regarded as an indispensable requisite, that a party before being permitted to avoid the statute, should show performance on his part *according* to his agreement. The following are some of the cases decided by this court on the question. *Thornton* v. *Heirs of Henry*, 2 Scam. 218; *Updike* v. *Armstrong*, 3 Scam. 564; *Ramsey et al.* v. *Liston et al.* 25 Ill. 114; *Stevens et al.* v. *Wheeler et al.* ib. 300; *Blunt* v. *Tomlin et al.* 27 Ill. 93; *Mason* v. *Bair*, 33 Ill. 194; *Keys* v. *Test*, ib. 316.

Mr. Justice Lawrence delivered the opinion of the Court:

This was a bill for specific performance, brought by McClellan, against Darrah. The cause was heard on the pleadings and evidence, and dismissed by the court without prejudice.

There is considerable conflict of testimony, but we have arrived at the following conclusions as to the facts.

In the spring of 1863, Darrah, being then in possession of fifty acres of land in Adams county, which he held under a

contract of purchase from the heirs of Charles Chase, sold the same to McClellan by a verbal contract. The latter was to pay six hundred and fifty dollars on the delivery of the deed, as he testifies, but as Darrah swears, the payment was to be made immediately, the sale having been expressly negotiated as a cash sale, and in this he is corroborated by Wells, the only witness who was present at the contract. McClellan further testifies that Darrah expected to get a deed from the heirs of Chase in two weeks, although two of them were in service in the army, and it was agreed that the deed should come from these heirs directly to McClellan. Our opinion, founded not only on what the evidence shows the parties said, but upon what they did, is, that the sale was made as a cash transaction, and the price was fixed upon that basis, it being expected that the deed would be procured without much delay, and that the arrangement which was made with Wartick would be only temporary.

That arrangement was somewhat peculiar. McClellan, having had several conversations with Darrah about the purchase of the land, and knowing his terms, had, before closing his verbal contract, agreed with one Wartick for a loan of six hundred dollars, at ten per cent. interest, with which to pay for the land, having fifty dollars of his own. But Wartick was not willing to part with his money to McClellan without security, and it was agreed he should have a mortgage on the land. This security, however, could not be given until a deed could be procured from the heirs of Chase, but as Darrah was a responsible man, Wartick was willing to pay him the money and take *his* note bearing ten per cent. interest. This was accordingly done, and McClellan took immediate possession of the land, Darrah reserving the rent for that season, of twenty acres which had been leased to another person. It is plain from all the circumstances, and even from the testimony of McClellan himself, that this was regarded as McClellan's debt, although Darrah gave his own note to Wartick, and it was expected by all parties that McClellan would pay both

the principal and interest. McClellan says, in his testimony, he was to pay Wartick ten per cent. interest from the time the latter agreed to keep the money for him, just before he closed his bargain with Darrah, until he could use the money in the payment of Darrah. He also says, on his cross-examination, that he intended Darrah should pay nothing on his note, and although on his re-examination on a subsequent day, he seeks to retract that testimony, yet it is clear, from all the evidence, that the money was really borrowed by McClellan, and that he was to hold Darrah harmless on the note, if he received the title to the land.

Darrah did not procure the deed from the Chase heirs until December, 1864, McClellan meanwhile having remained in possession of the land and made some improvements thereon, and Darrah having paid a year's interest at ten per cent. to Wartick. The deed from the heirs of Chase ran directly to McClellan, and Darrah, immediately upon its receipt, called on McClellan, told him he was ready to deliver the deed, and demanded payment. McClellan, according to his own testimony, denied that he had agreed to pay any interest, while Darrah insisted on his right to ten per cent., the amount for which he was bound on his note to Wartick. Darrah then left, stating, as he testifies, that he would not have another interview with McClellan. McClellan swears that, a few days afterwards, he sent to Darrah, offering him the money and six per cent., which Darrah refused. Some time in the summer of 1865, but at what precise date does not appear, McClellan went to Darrah and tendered the money and ten per cent. interest, which the latter refused, having, in the meantime, surrendered to the heirs of Chase the deed running to McClellan, and taken one directly to himself.

Although in contracts for the sale of land, where time is not expressly made an essential stipulation, the mere failure by the purchaser to tender payment within the time agreed upon is not a reason for denying specific performance, if such delay receives a satisfactory explanation and one consistent with the

good faith of the purchaser, yet he has never been permitted first wilfully to repudiate the obligations of his own contract, and then turn round and ask a court of chancery specifically to enforce it. Yet that is the position the complainant in this case occupies. It is impossible not to believe that, by the arrangement made when the land was sold, he was, in order to avail himself of the purchase, to pay Darrah precisely what Darrah promised, at his suggestion, to pay Wartick. It is impossible he should not have seen, when Darrah called upon him with the deed, that good faith and fair dealing required this at his hands. Yet he denied any agreement to pay interest at all, and not until months thereafter did he offer to pay the ten per cent. Practically, he was insisting that Darrah should be considered as having sold him land and given him the use of it, and at the same time as having borrowed money, paying the interest himself, in order to enable McClellan to make the purchase. The conduct of McClellan in repudiating the obligation to pay the ten per cent. interest was so inequitable in itself, so inconsistent with what, we are convinced, was the understanding of the parties when the land was sold, and persisted in so long after the tender of the deed, that we should be disregarding the settled rules which govern courts of chancery if we were to grant the relief asked in this case. To grant it would tend to break down all distinction between good and bad faith.

The decree must be affirmed.

*Decree affirmed.*